NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARK D. EISELE,**
*Petitioner,*

**v.**

**UNITED STATES POSTAL SERVICE,**
*Respondent.*

---

2010-3002

---

Petition for review of the Merit Systems Protection Board in DC0752080626-C-2.

---

Decided: July 22, 2010

---

MARK D. EISELE, of Rock Hill, South Carolina, pro se.

MICHAEL J. ELSTON, Appellate Counsel, Office of the General Counsel, United States Postal Service, of Washington, DC for respondent. With him on the brief was LORI J. DYM, Chief Counsel.

---

PER CURIAM.

Mark D. Eisele appeals from a decision of the Merit Systems Protection Board (Board) denying his petition to enforce the Board's order for back pay. *See Eisele v. U.S. Postal Serv.*, No. DC-0752-08-626-1-1 (MSPB Nov. 26, 2008 ) (*Eisele I*) (ordering the Postal Service to pay Mr. Eisele back pay); *Eisele v. U.S. Postal Serv.*, No. DC-0752-08-626-C-2 (MSPB July 2, 2009) (*Eisele II*) (denying petition to enforce). For the reasons discussed below, we *affirm*.

## BACKGROUND

Mr. Eisele was employed as a mail processing clerk at the Charlotte Processing and Distribution Facility in Charlotte, North Carolina. On April 17, 2008, the Postal Service placed Mr. Eisele on administrative leave with pay pending a fitness for duty examination. Mr. Eisele was examined by Dr. Amalia Falcon (his own physician), Dr. Richard Bradner (a physician hired by the Postal Service), and Dr. Alan Lombardi (a psychologist hired to conduct the fitness for duty examination), all of whom expressed concerns about Mr. Eisele's mental condition. *Eisele I*, at 2-3. Drs. Falcon and Bradner concluded that Mr. Eisele was not fit to return to work and that he was in need of long term psychiatric treatment. *Id.* Dr. Lombardi concluded that although Mr. Eisele was "not necessarily unfit, it might be prudent to explore other options with him in terms of his employment." *Id.* at 2.

On May 28, 2008, the Postal Service informed Mr. Eisele that it had concluded that he was not fit to return to work and gave him three options: resign, apply for disability retirement, or retire if eligible. On June 13, 2008, the Postal Service informed Mr. Eisele that if he did

not select one of the three options, then his administrative leave status would be terminated and the Postal Service would propose his removal. On June 14, 2008, the Postal Service placed Mr. Eisele on leave without pay.

Mr. Eisele appealed to the Board, alleging that he had been constructively removed. The Board determined that the Postal Service did not provide Mr. Eisele with the procedural protections required by statute and the U.S. Constitution prior to suspending him. The Board reversed the suspension and ordered the Postal Service to retroactively restore Mr. Eisele's pay and benefits effective June 14, 2008. The initial decision issued on November 26, 2008. Mr. Eisele filed a notice of appeal to this court, but he did not submit a brief. His appeal was dismissed on June 4, 2009, and at which point the initial decision ordering back pay became the final decision of the Board.

While Mr. Eisele's case was pending before the Board, the Postal Service took steps to correct any possible due process violation. On November 7, 2008, the Postal Service proposed that Mr. Eisele be placed on enforced leave based on a medical condition rendering him unfit for duty. Gov't Br. 3. Mr. Eisele responded on November 24, 2008. *Id.* After this period for notice and response, the agency then placed Mr. Eisele on enforced leave effective December 14, 2008. *Id.*

The Postal Service did not pay Mr. Eisele any back pay for the period after June 14, 2008. The Postal Service sent Mr. Eisele a letter dated January 21, 2009 informing him that he was not entitled to back pay because Mr. Eisele was not ready, willing, and able to work during the period in question. The Postal Service asserted that it was in full compliance with the Board's order.

Mr. Eisele filed a petition for enforcement seeking his back pay.[1] The Board explained that the goal of awarding back pay is to place the employee in the same position in which he would have been without the wrongful personnel action. *Eisele II*, at 4. Thus, an employee is not entitled to back pay if the employee was not ready, willing, and able to work during the period in question. *Id.* The Board further explained that when the agency produces "concrete and positive evidence" that the employee was not ready, willing, and able to work during all or part of the period for which he seeks back pay, the burden shifts to the employee to show that he is entitled to back pay. *Id.* Before the Board, the Postal Service provided three medical opinions. Dr. Richard Bradner, a physician hired by the agency, concluded that Mr. Eisele was not fit for duty. *Id.* at 3. Dr. Amalia Falcon, Mr. Eisele's own doctor, concluded that Mr. Eisele was not fit to return to work and was in need of long-term psychiatric treatment. *Id.* at 2. Dr. Alan Lombardi, the psychiatrist who performed the fitness for duty examination, noted that Mr. Eisele had a paranoid personality disorder and concluded that although Mr. Eisele was "not necessarily unfit, it might be prudent to explore other options with him in terms of his employment." *Id.* The Postal Service also cited four worker's compensation claims filed by Mr. Eisele in October 2008 claiming that he was incapacitated by work-related stress (listing June 7, 2005, as the date of illness), a shoulder injury (date of injury October 23, 2005), carpal tunnel syndrome (date of illness December 3, 2007), and hemorrhoids. *Id.* at 5; Gov't Br. 4. In his

---

[1] Mr. Eisele's first petition for enforcement was dismissed because his appeal before this court was still pending. Mr. Eisele filed a second petition, and shortly thereafter his appeal was dismissed. Thus the Board determined that it was appropriate to adjudicate his second petition.

claims, Mr. Eisele stated that he stopped work due to these injuries on April 17, 2008, or June 13, 2008. Gov't Br. 4. The Board also reviewed a letter submitted by Dr. Robert Fulmer dated January 22, 2009, stating that Mr. Eisele was unable to perform his duties due to shoulder pain and hemorrhoids cause by the heavy lifting required by his job. *Eisele II*, at 5. In addition, the Board reviewed an insurance form dated March 5, 2009, on which Mr. Eisele claimed that he was "continuously and totally disabled and unable to perform substantially all of his occupational duties from April 17, 2008, to the present." *Id.* at 5. The Board determined that "the undisputed evidence here, bolstered by the appellant's own admissions in [worker's compensation claim forms] and a disability insurance form, shows that he was not ready, willing and able to work from June 14, 2008, to present." *Id.* The Board thus denied Mr. Eisele's petition for enforcement.

Mr. Eisele appealed to this court for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

DISCUSSION

A decision by the MSPB must be affirmed unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Hamel v. President's Comm'n on Exec. Exch.*, 987 F.2d 1561, 1564 (Fed. Cir. 1993). "Substantial evidence must be such as would persuade a reasonable fact finder, but need not be, in our view, a preponderance." *Stanke v. Dep't of Transp.*, 805 F.2d 1572, 1577 (Fed. Cir. 1986).

An employee affected by an unjustified or unwarranted personnel action that resulted in the withdrawal or reduction in pay is entitled to back pay that "the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period." 5 U.S.C. § 5596(b)(1) (Back Pay Act). "[T]he basic principle of back pay, adopted by Congress in 1948, holds that an employee is entitled to be made whole whenever an erroneous personnel action which has terminated or reduced his compensation is corrected by appropriate authority." *Martin v. Dep't of the Air Force*, 184 F.3d 1366, 1371 (Fed. Cir. 1999).

The statute itself does not address how an agency must calculate the amount of back pay. Congress authorized the Office of Personnel Management (OPM) to prescribe regulations to carry out the Back Pay Act. 5 U.S.C. § 5596(c); *Martin*, 184 F.3d at 1370. Pursuant to this authority, OPM issued a regulation instructing that when computing the amount of back pay, an agency may not include pay for "[a]ny period during which an employee was not ready, willing, and able to perform his or her duties because of an incapacitating illness or injury." 5 C.F.R. § 550.805. This reflects the desire to make the employee whole and to avoid overcompensation when it is clear that the employee would not have been able to work even in the absence of the wrongful personnel action.

The Board's conclusion that Mr. Eisele was not ready, willing, or able to work due to an incapacitating illness or injury is supported by substantial evidence. Drs. Bradner and Falcon determined that Mr. Eisele was not fit to return to work because of his mental condition, and Dr. Fulmer found that he was unable to work because of his shoulder pain and hemorrhoids. Mr. Eisele himself

admitted on an insurance claim that he was "continuously and totally disabled and unable to perform substantially all of his occupational duties from April 17, 2008, to the present." *Id.* at 5. Thus, the Board properly declined to grant Mr. Eisele's petition for enforcement because he was not ready, willing, and able to work during the relevant time frame. Although in her prior opinion the administrative judge ordered the Postal Service to give Eisele back pay, in her second decision (the one here under review) she determined that the amount of back pay actually owed to Mr. Eisele was zero. Thus, effectively, the administrative judge determined that Mr. Eisele was not entitled to back pay. *See Eisele II*, at 5 ("The undisputed evidence here, bolstered by the appellant's own admission in OWCP claims and a disability insurance form, shows that he was not ready, willing and able to work from June 14, 2008, to present, and thus is not entitled to back pay as ordered in the initial decision issued on November 26, 2008."). To the extent that Mr. Eisele raises other arguments, they are without merit.

CONCLUSION

For the reasons discussed above, we *affirm* the Board's denial of Mr. Eisele's petition to enforce the Board's prior order of back pay.

**AFFIRMED**